## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PAUL WHITE, individually and on
behalf of all those similarly situated,

       Plaintiff,

v.

GRANITE
TELECOMMUNICATIONS, LLC,

       Defendant.

CIVIL ACTION NO.
1:17-cv-03243-TWT

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; SERVICE PAYMENT TO NAMED PLAINTIFF AND OTHERS; AND FOR AN AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES

Comes now the Plaintiff, Paul White, and moves this Court to grant final approval of the class and collective action settlement reached between the Plaintiff and the Defendant, Granite Telecommunications, LLC ("Granite) and award the relief that he requests below. In support thereof, Plaintiff states as follows:

### FACTUAL AND PROCEDURAL AND BACKGROUND

On or about August 28, 2017, Plaintiff commenced an action by filing a Complaint in the United States District Court for the Northern District of Georgia (the "Court"), captioned as: Paul White, individually and on behalf of all those

1

similarly situated v. Granite Telecommunications LLC, Civil Action No. 1:17-cv-03243-TWT (the "Civil Action").  ECF No. 1.

The Civil Action asserted a claim stemming from the allegation that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") by failing to pay the Plaintiff and other similarly situated employees overtime compensation. Plaintiff is a former employee of the Defendant who held the position of Regional Account Manager. The Civil Action was filed by the Plaintiff as a collective action pursuant to 29 U.S.C. § 216.

### A.    The Parties Negotiate and Reach A Reasonable Settlement.

The Parties engaged in an immediate and thorough exchange of information to facilitate a negotiated resolution. As part of this exchange, Granite produced, and the Plaintiff reviewed with and through his counsel, voluminous electronic data equivalent to hundreds of thousands of pages of documents.

In preparation for the discussions about a negotiated resolution, Granite assembled and analyzed multiple sources of data relevant to an objective, reasonable assessment of the amount of unpaid overtime compensation that may have been due to Plaintiff and other similarly situated employees. Granite also produced the data underlying this analysis to the Plaintiff, and the Plaintiff conducted an independent review of this data with and through his counsel.

The Parties conducted a full-day, in-person negotiation session on October 27, 2017.   The Parties continued settlement negotiations thereafter and reached a settlement in principle on November 12, 2017.

Counsel for the Parties engaged in good faith, arms-length negotiations to settle the Civil Action and ultimately reached agreement on the terms and conditions of a settlement on a class-wide basis as set forth in the Settlement Agreement, (the "Settlement Agreement") which was previously attached as Exhibit 1 to ECF No. 33.

By the Settlement Agreement, the parties have agreed to monetarily resolve the Civil Action asserted for a Gross Settlement Amount of One Million, One Hundred and Seven Thousand Dollars, and zero cents ($1,107,000.00).

Plaintiff, through his counsel, made a thorough and independent investigation of the facts and law relating to the controversies between the Parties. In agreeing to the Settlement, Plaintiff and his counsel considered: (i) the facts developed during their investigation and the law applicable thereto; (ii) the attendant risks of continued litigation and the uncertainty of the outcome of their claims; (iii) the desirability of permitting the Settlement to be consummated according to the terms of the Settlement Agreement; and (iv) the conclusion of Plaintiff and his counsel that the terms and conditions of the Settlement are fair, reasonable, adequate, and that it is

in the best interests of Plaintiff and the Settlement Class Members[1] to settle their claims against Defendant.

**B.    The Court Preliminarily Approves the Settlement.**

On December 29, 2017, Plaintiff filed his Motion for Class Certification and Preliminary Approval of Class Settlement (the "Preliminary Approval Motion"). ECF No. 33.  Per agreement between the Parties, Plaintiff also filed an Amended Complaint concurrent to filing the Preliminary Approval Motion.  The Amended Complaint was identical in substance to the original complaint filed in the Civil Action, except that pursuant to Federal Rule of Civil Procedure 23, it added to the pending FLSA claim putative class action claims under state law.

By its Order of January 3, 2018, this Court granted the Preliminary Approval Motion.   ECF No. 34.   In its Order, this Court preliminarily approved for certification:

> The class consisting of (1) any and all persons employed by Granite in an Eligible Position at any time between January 1, 2015 through and including February 1, 2017, and (2) any and all persons who filed an opt-in consent form in the Civil Action on or before October 30, 2017, is hereby conditionally certified to proceed as a collective action pursuant to the FLSA (the "FLSA Settlement Class") [and]

> The class consisting of any and all persons employed by Granite in an Eligible Position in Florida, Massachusetts, New York, or Rhode

---

[1] The term "Settlement Class Members" is defined in § 1(h) of the Settlement Agreement, ECF No. 33-1.

Island at any time between January 1, 2015 through and including February 1, 2017 is hereby preliminarily certified to proceed as a class pursuant to Federal Rule of Civil Procedure 23 (the "State Law Settlement Class").

By its Order, the Court also granted all other relief requested by the Plaintiff in his Motion, including (i) acceptance of the Plaintiff's Amended Complaint; (ii) approval of the submitted Settlement Notice and Claim Form; and (iii) approval of Rust Consulting ("Rust") as Administrator of the class and settlement proceedings. See ECF No. 34.

### C.    Plaintiffs in A Similar Action In Florida File Objections Before Notice Is Disseminated.

On January 18, James Hair and Christopher Witkowski (the "Hair Plaintiffs") filed an "Objection to the Court's Order Granting Preliminary Approval of Class and Collective Settlement" (the "Florida Objections").[2]  ECF No. 36 at 1.  The Hair Plaintiffs are the two named plaintiffs in a similar action pending in the United States District Court for the Southern District of Florida.  *See Hair v. Granite Telecommunications*, Case No. 9:17-cv-81361-DMM, ECF No. 1 (Complaint) (S.D. Fla. Dec. 18, 2017) (the "Florida Action").  In the Florida Action, the Hair Plaintiffs

---

[2] The Hair Plaintiffs subsequently filed the same pleading, re-captioned as a "Emergency Objection to the Court's Order Granting Preliminary Approval of Class and Collective Settlement and Emergency Motion for Expedited Hearing to Stay Issuance of Class Notice to Florida Class Members."  *See* ECF No. 38 at 1.

seek to recover allegedly unpaid overtime under the FLSA.

The Florida Objections were filed on the day before the class notice—which the Parties had diligently worked to ready for distribution and which had already been finalized, printed, and postmarked by the time the Hair Plaintiffs filed their objections—was scheduled to be mailed. Absent a contrary order of this Court, the Parties continued to comply with the preliminary approval order, and Rust mailed the court-approved notice forms as planned on January 19, 2018.

The Parties jointly responded to the Florida Objections on January 22, 2018. Subsequently, the Hair Plaintiffs notified both Rust and this Court that they were opting out of the settlement in this action. *See* ECF No. 39. This Court has not yet acted on the Florida Objections.

### D.    Notice Is Disseminated, and the Class Members Respond.

On January 19, Rust disseminated the notice approved by the Court to the 387 individual Settlement Class Members. As detailed in the accompanying affidavit of Abigail Schwartz, Rust took extensive steps to ensure that the Settlement Class Members received "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). These efforts included address verifications, address tracing of undeliverable notices, and attempts to reach the recipients of undeliverable notice by telephone. *See* **Exhibit A**, Schwartz Aff. ¶¶ 8-13. A website was also set up to

apprise Settlement Class Members of their rights and to accept claims submitted online. *Id*. ¶ 9.

The notice contained an estimate of each Settlement Class Member's expected payment if he or she chose to participate in the settlement. This estimated payment was calculated according to the formula specified in § 12(a) of the Settlement Agreement. The formula specifically considered the number of weeks each individual worked as a Settlement Class Member between January 1, 2015 and February 1, 2017, and the amount earned in salary and commissions while working for Granite during this time period.

Of the 387 Settlement Class Members to whom notice was directed, 244 submitted completed claim forms, for a response rate of 63 percent of the Settlement Class Members, who claimed 73 percent of the available funds. *Id*. ¶ 14. Fourteen individuals elected to opt-out of the settlement and submitted requests to do so to Rust, although one such individual subsequently revoked his request to opt-out and submitted a completed claim form. *Id*. ¶¶ 15-16.

Settlement Class Members continued to respond to the notice after the formal deadline to do so passed. Counsel for the Parties have conferred and have agreed that those claims submitted on or before the date of the final approval hearing in this matter should be honored, and the Parties hereby request the Court's leave to do so.

7

E.    **Class Representatives in An Entirely Separate Action in Massachusetts File Objections**

Meanwhile, more than six weeks after this Court preliminarily approved the settlement in this action, the Massachusetts Superior Court allowed a motion for class certification in *Granite Telecommunications, LLC v. Contino et al.*, Civil Action No. 2014-699 (Massachusetts Superior Court, Norfolk County) (the "Massachusetts Action"). In that litigation, a long-running dispute between Granite and two of its highly compensated—in excess of $1 million per year—salespeople, Paul Contino and the Estate of Michael Hawes (the "Contino Class Representatives")[3] principally assert various counterclaims under Massachusetts state law related to the calculation and payment of commissions to Granite salespeople. The Contino Class Representatives also assert a counterclaim for allegedly unpaid overtime under Mass. Gen. Laws. ch. 151, § 1A.

On April 5, the Contino Class Representatives moved on an emergency basis for a temporary restraining order in Massachusetts State Court seeking, among other

---

[3] The Massachusetts Action began in mid-2014, when the Contino Class Representatives left Granite to form their own business in direct competition with Granite, and Granite affirmatively brought suit against the Contino Class Representatives to enforce their contractual confidentiality and non-competition obligations. The state court enjoined the Contino Class Representatives from further violating those obligations. Subsequently, the Contino Class Representatives brought the counterclaims for damages that are still pending in the Massachusetts Action.

relief, to prevent Granite from communicating with class counsel in this action and counsel in the Florida Action without the knowledge or consent of the Contino Class Representatives' counsel. The state court temporarily allowed such relief after a hearing later the same day. The state court also ordered Granite to file a notice to this Court regarding the pendency and status of the Massachusetts Action by the following day, April 6, and Granite complied. *See* ECF No. 41.

At a subsequent hearing on April 9, the state court dissolved its temporary restraining order and lifted the restrictions on Granite's communications with class counsel in this action and counsel in the Florida Action. The state court also ordered that the class period in the Massachusetts Action was limited to the time from June 5, 2008 to May 7, 2014.

On the afternoon of April 9—after the hearing and the state court's order dissolving the temporary restraints on Granite—the Contino Class Representatives counsel transmitted objections to the settlement in this action to Rust (the "Massachusetts Objections").[4] The Massachusetts Objections state that they are on behalf of (1) Mr. Contino, who is not a Settlement Class Member in the instant case, (2) the entire class in the Massachusetts Action, and (3) Mr. John Curtin, who is a Settlement Class Member in the instant case.

---

[4] The Massachusetts Objections are attached hereto **as Exhibit B**.

### F.    The Parties Amend the Settlement Agreement

In order to address some of the concerns raised in the Florida Objections and the Massachusetts Objections, the Parties agreed to amend the Settlement Agreement in this action to further narrow the limited release that applies to the Settlement Class Members. The fully executed amendment (the "Amendment")[5] modifies the scope of the limited release applicable to the Settlement Class Members in two respects:

- It makes clear that Settlement Class Members are only releasing claims for the relevant class period in this action: January 1, 2015[6] through February 1, 2017.

- It makes clear that the Settlement Class Members are only releasing the overtime-related claims pleaded in this action and that the release does not extend to non-overtime claims, like the commissions claims principally at issue in the Massachusetts Action.

The effect of the Amendment is entirely to the benefit of the Settlement Class Members, so no additional notice is required. *See In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 386 (E.D. Pa. 2015) ("[T]hese changes improved the deal for Class Members without providing any concessions to

---

[5] The Amendment is attached hereto as **Exhibit C**.

[6] For Mr. White and certain other individuals who opted in to this action pursuant to 29 U.S.C. § 216(b) between the filing of this action in August 2014 and October 2014, the class period begins on the date three years prior to the filing of their opt-in consent forms in this action, and the Amendment makes clear that the release extends to this earlier period for these individuals.

the NFL Parties, an additional round of notice for Class Members is unnecessary.")
(collecting cases).

## DISCUSSION

### I.    The Settlement Should Be Approved

#### A.    The Settlement Is Fair, Adequate, and Reasonable

"In order to approve the settlement agreement, the district court [is] required to determine that it was fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530-31 (11th Cir. 1994) (citing *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

"This Circuit has outlined several factors useful in making that determination." *Id.* These factors include "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement." *Id*. at 1530, n.6.

In the instant matter:

- There exists no fraud or collusion whatsoever;
- "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981).

11

The disputed questions of law and fact were complex, including, as just an example, the questions of whether Defendant's conduct violated the law, and whether the class representatives were similarly situated to the named Plaintiff;

- The parties voluntarily engaged in extensive and substantial discovery and exchanged information as detailed above shortly after the original complaint was filed. Doing so allowed the parties to arrive at a fair and reasonable resolution after arms-length negotiations;

- Both Plaintiff and Defendant were confident in their prospects to prevail in the litigation. However, in reaching a settlement at an early stage of litigation, the Parties both removed the inherent uncertainty of prevailing on the merits after an expected long and costly litigation process;

- The settlement terms regarding class member recovery were based on careful analysis by both Plaintiff and Defendant of the overtime compensation due to the individual Class Members, and these settlement terms represent an accurate accounting of the class members' range of recovery;

- As detailed in the attached affidavit of Abigail Schwartz, the Settlement Class Members have been afforded "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B);

- The Settlement Class Members have favorably responded to the settlement, which over 60 percent of individuals returning claim forms and 73 percent of the net settlement funds being claimed; and

The settlement terms are consistent with the favorable opinions of class counsel. As explained in depth below, the opposition to the settlement from the select few Massachusetts and Florida class members lack substance and legal justification or have otherwise been remedied.

Accordingly, the settlement is fair, reasonable and adequate, and should be approved by this Court.

## B. The Objections Should Be Overruled and the Settlement Approved

### 1. The Florida Objections Are Procedurally Defective and Meritless

The Parties have already responded substantively to the Hair Plaintiffs' objections. *See generally* ECF No. 37. The Parties' joint response to the Florida Objections is hereby incorporated by reference in its entirety here, and the Court is respectfully referred to that pleading for a thorough explanation for the legal bases for overruling the Florida Objections. To summarize, the Florida Objections should be overruled because:

- The Hair Plaintiffs have opted-out of the settlement in this action. *See* ECF No. 39. Accordingly, they have no standing to raise objections here, and their objections must be overruled. *See In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.C. Cir. 2000) (quoting *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993)); *accord Root v. Ames Dep't Stores, Inc.*, 989 F. Supp. 274, 275 (D. Mass. 1997); *see also* ECF No. 37 at 3-6.

- The Hair Plaintiffs concede that a viable theory of recovery exists under Florida state law, and such claims may be resolved as part of a settlement class under Rule 23(e). *See* ECF No. 37 at 9-14.

- Although the original scope of the release applicable to the Settlement Class Members was permissible, the Hair Plaintiffs' objection to the scope of the release is moot because the Parties have amended the Settlement Agreement and limited the end date of the period covered by the release to February 1, 2017. *See* **Ex. C.**

- As discussed in more detail in the motion for preliminary approval, and in the Parties' substantive response to the Florida Objections, Mr. White is an adequate class representative. *See* ECF No. 33 at 10-12; ECF No. 37 at 15.

Accordingly, the Florida Objections must be overruled.

### 2.    The Massachusetts Objections Are Similarly Meritless

Rather than objecting to the settlement in its entirety, the Massachusetts Objections *solely* concern the effect that the settlement in this action may have on the claims of 33 Settlement Class Members who are also potential members of the class in the Massachusetts Action. *See* **Ex. B** at 12. Despite extensively detailing the litigation history in the Massachusetts Action and accusing Granite of various misconduct,[7] the Massachusetts Objections only object to the settlement here to the extent that it may affect the class counterclaims in the Massachusetts Action. *Id.* at 12. Because the class periods in the Massachusetts Action and this action do not overlap, and because the Parties have executed an amended Settlement Agreement that makes it crystal clear that the release in this action does not extend to the claims presently at issue in the Massachusetts Action, the Massachusetts Objections must be overruled.

---

[7] Of course, the merits of the Massachusetts Action are not before this Court, so neither Plaintiff nor Granite will respond in this action to the Massachusetts Objections' arguments about the merits of the Massachusetts Action.

As a threshold matter, Mr. Contino himself is not a Settlement Class Member here and has no standing to assert objections to this settlement. "The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals . . . Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-class members to inject their concerns via objection at the settlement stage would tend to frustrate this goal." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (internal citations omitted); *accord Root*, 989 F. Supp. at 275 (individual who has not opted in to FLSA collective action "lacks any interest in the matter sufficient to give her standing to object to the settlement."). Accordingly, Mr. Contino may not assert objections—either on his own behalf or on behalf of the class he represents in the Massachusetts Action—to this settlement.

On the merits[8] of the Massachusetts Objections—to the extent they are asserted by Mr. Curtin, the only party identified in the Massachusetts Objections

---

[8] The Massachusetts Objections faintly attempt—in a footnote—to assert that this Court lacks jurisdiction over any Massachusetts state law claims for failure to exhaust administrative remedies. This argument is foreclosed by binding Massachusetts authority. For one thing, overtime claims pursuant to Mass. Gen. Laws. ch. 151, § 1A have no exhaustion requirement. *See* Mass. Gen. Laws. ch. 151, §§ 1, 1A. Even if there were such a requirement for overtime claims—and there is not—"[a plaintiff's] failure first to file a complaint with the Attorney General does not deprive the United States District Court of jurisdiction to consider his claims under G.L. c. 149, §§ 148, 148B, and 150, and G.L. c. 151, §§ 1 and 1A." *Depianti*

with standing to raise them here—the objections present no basis for this Court to reject the settlement.

The settlement is fair, adequate, and reasonable, and represents a compromise of the overtime claims asserted against Granite.    Although the Massachusetts Objections make much of Mr. Curtin's $33.97 estimated recovery, Granite's records show that the reason Mr. Curtin received such a small fraction of the overall recovery in this action is that Mr. Curtin only worked for nine days during the class period. Mr. Curtin has submitted no evidence tending to show that $33.97 is an unreasonable compromise of any claim he may have for overtime compensation for work performed between January 1, 2015 and January 9, 2015.

As for any other claims Mr. Curtin may have against Granite as a potential class member in the Massachusetts Action for the period between June 5, 2008 and May 7, 2014, those claims are unaffected by the settlement here.  As amended, the release here only extends to "overtime-related" claims—not the commissions-related claims principally at issue in the Massachusetts Action.  *See* **Ex. C**.  And, as amended, the release here is limited in time and does not extend to claims during the class period in the Massachusetts Action—June 5, 2008 to May 7, 2014.  *See id.*

---

*v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 614 (2013).  This Court plainly has jurisdiction over the Massachusetts state law overtime claims asserted here.

Given that such claims are unaffected by the release here, their pendency in the Massachusetts Action presents no basis to reject this settlement.

The state law claims here do not overlap with the state law claims in the Massachusetts Action. The Massachusetts Objections spend nearly three single-spaced pages discussing purported "overlap" between the state law claims at issue here and the state law claims at issue in the Massachusetts Action. But by their plain language the Massachusetts Objections *concede* that no such overlap exists. Instead, the Massachusetts Action only covers claims for "the period June 2008 to May 2014."[9] *See* **Ex. B** at 3.

Accordingly, because the class period here begins well after May 2014 for all Settlement Class Members, no overlap exists between this action and the Massachusetts Action. No objections may stand on this basis.

The limited release of claims for the Settlement Class Members is appropriate. As discussed above, the release, as amended, extends only to the "overtime-related" claims that Settlement Class Members may have for the class period in this action. *See*, **Ex. C.** Such a limited release—which does not affect any rights that any

---

[9] Although the Massachusetts Objections note that the class representatives in that action "intend, at an appropriate time," to move the state court to extend the class period, no such motion has been filed yet. Moreover, the state court ordered, at the April 9 hearing, that the class period in the Massachusetts Action only extended from June 5, 2008 to May 7, 2014.

Settlement Class Members may have in the claims at issue in the Massachusetts Action for the period between June 5, 2008 and May 7, 2014—is entirely reasonable and fair to the Settlement Class Members.

Settlement Class Members received adequate notice. The Massachusetts Objections fault the notice to the Settlement Class Members here for not mentioning the Massachusetts Action. But the Massachusetts Objections omit the critical fact that, when notice was approved by this Court and distributed to the Settlement Class Members, *the Massachusetts Action had not been certified as a class*. Accordingly, at the time notice was distributed, none of the Settlement Class Members had any rights in the Massachusetts Action of which they needed to be apprised in the notice.

Moreover, the release in this action, as amended, leaves intact the rights of any Settlement Class Member who may also be a member of the class in the Massachusetts Action for the June 5, 2008 to May 7, 2014 period currently covered by the Massachusetts Action. As a result, the Settlement Class Members need not receive any notice of the Massachusetts Action in connection with this settlement, for the settlement does not affect any of their potential claims in the Massachusetts Action for the period presently covered by the Massachusetts Action.

Finally, the notice—as this Court has already determined—accurately summarized the settlement and the claims at issue in this action and sufficiently

informed the Settlement Class Members of their rights to participate, opt-out, or object as they saw fit. Nothing more is required here.

The discovery disputes in the Massachusetts Action have no effect this Court's appraisal of the settlement. The Massachusetts Objections make various complaints about discovery in the Massachusetts Action. These issues were litigated extensively in the Massachusetts Action on the Contino Class Representatives' emergency motion and in two separate hearings held in state court on April 5 and April 9. The litigation of those discovery disputes is now over and resulted in *no* continuing restraints on Granite's conduct or the Parties' conduct in this action. Nor—given the timely filing of the Massachusetts Objections—did it result in any prejudice to the ability of counsel for the Contino Class Representatives in the Massachusetts Action to raise objections here.[10] Those disputes therefore present no basis for this Court to reject the settlement here.

The release in this action is not a forbidden "special contract" under Massachusetts law. Instead, the release here, as amended, is an appropriate, limited release of the claims brought in this action and resolved as part of the settlement.

---

[10] To the extent that the Massachusetts Objections again raise the scope of the release here as a basis for rejecting the settlement, the argument is meritless. Again, as amended, the release in this action leaves intact the rights of any Settlement Class Member who may also be a member of the class in the Massachusetts Action for the June 5, 2008 to May 7, 2014 period currently covered by the Massachusetts Action.

None of the authority in the Massachusetts Objections even suggests—let alone holds—that a release of claims brought in litigation, resolved in settlement, and subject to scrutiny by a federal judge assessing the fairness of the settlement constitutes a forbidden "special contract" under Massachusetts law. Instead, as discussed at length above, the releases in this action are limited, entirely appropriate and reasonable, and present no basis for rejecting the settlement.

Accordingly, the Massachusetts Objections must be overruled in their entirety.

## FINAL COLLECTIVE AND CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Plaintiff also requests that this Court finally certify the settlement classes under the FLSA and Federal Rule of Civil Procedure 23 that the Court provisionally certified in its order of preliminary approval. As discussed in the Preliminary Approval Motion, the proposed class here meets the requirements for certification as a class action under both the FLSA and Rule 23. *See* ECF No. 33 at 10-12. Plaintiff incorporates the discussion in that pleading herein by reference and respectfully submits that final class certification for settlement purposes only is appropriate here for the reasons articulated there. *See* ECF No. 33 at 10-12. Accordingly, Plaintiff respectfully requests that the Court finally certify the classes

preliminarily certified to proceed as settlement classes under the FLSA and Federal Rule of Civil Procedure 23.

## INCENTIVE PAYMENTS

Mr. White, as the named Plaintiff in this action, requests the reasonable payment of $5,000 for his time and service. Additionally, he requests that this Court approve an incentive payment of $2,500 from the settlement fund to his fellow Class Members who filed opt-in consent forms in this action on or before October 30, 2017. Per the Settlement Agreement and relevant pleadings, this request is unopposed by the Defendant.

*In Campos v. ChoicePoint Servs.*, No. 1:03-cv-3577-WSD, 2007 U.S. Dist. LEXIS 48554, at *10 (N.D. Ga. July 5, 2007), "the Court [ ] considered Plaintiffs' request to pay each individual plaintiff the amount of $ 5,000 for their time and expenses as named plaintiffs in the litigation. The request is unopposed. The Court determines this payment amount is reasonable and consistent with the individual plaintiff payments approved in other class actions in this district and circuit."

"Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding named plaintiffs incentive awards in the amount of $5,000 each)

(quoting *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 189 (D. Me. 2003)). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lupron Marketing and Sales Practice Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005) (awarding named plaintiffs incentive awards in the amounts of $5,000, $2,500, and $25,000).

Here, Plaintiff White assumed risk by coming forward, and representing potential class members in this action. Plaintiff White initiated the investigation and the filing of this class action. Due to the risk he took in filing a lawsuit against his former employer, approximately 387 employees had the opportunity to participate in the settlement. As such, because Plaintiff White took the initiative and was willing to put his name to this class action--thus assuming some risk of an adverse outcome—the requested service payment is reasonable.

Plaintiff White's active involvement in this class action could have had a negative effect on his ability to obtain employment if his potential employer learned that he sued a former employer. Despite this risk, he took an active part in this litigation. As such, the requested $5,000 service payment is reasonable.

Furthermore, the participation and risk taken by the Class Members filing opt-in forms before the Settlement Agreement was reached played a critical role in demonstrating the merit of the instant class case and contributing to the resolution. Such participation and involvement were of public knowledge, as compared to choosing to wait and opt in to the settlement in a far more obscure manner. Accordingly, an incentive payment of $2,500 to these 14 Class Members is reasonable.

## ATTORNEY FEES, COSTS AND EXPENSES

By its Order of January 3, 2018, this Court appointed the undersigned as Class Counsel in the instant matter.  Class Counsel requests, without objection of the Defendant, that this Court approve an award of fees and costs in the amount of one-third of the common fund provided by the settlement: $369,000.  In doing so, this Court would act in conformity with the precedent of this District, the Southern District of Georgia, and the Eleventh Circuit.

The Eleventh Circuit has clarified the requirement that attorneys' fees in common fund cases be determined using the percentage-of-the-fund approach, rather than the former "lodestar/multiplier" approach.  See *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

In *Columbus Drywall & Insulation v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2012 U.S. Dist. LEXIS 196030, at *5-6 (N.D. Ga. Oct. 26, 2012), the Court summarized this District and the Eleventh Circuit's jurisprudence on this issue as follows:

> When a representative party has created a "common fund" for the substantial benefit of a class, the court should award attorney fees based upon the benefit obtained. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392-93, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970). "[C]ourts ... have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce ... laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 348-49 (N.D. Ga. 1993).

*Columbus Drywall & Insulation,* 2012 U.S. Dist. LEXIS 196030, at *5-6.

Accordingly, in *Columbus Drywall & Insulation,* "the Court award[ed] class counsel fees equal to one-third of the settlement fund ($25 million) and reimburses class counsel for their out-of-pocket expenses incurred in representing the class and obtaining this settlement." *Id*. at *4 (parentheses in original).

In *Guzman v. Consumer Law Grp., P.A.*, Civil Action No. 1:11-cv-00187-JRH, 2016 U.S. Dist. LEXIS 62410, at *12-13 (S.D. Ga. May 11, 2016), "Class

counsel [ ] requested a fee of 33 1/3% of the settlement fund for its efforts in litigating the case and facilitating the settlement." *Id*. at *11. With regard to this request, the *Guzman* Court ruled as follows:

> "[T]he Court concludes that the requested award is fair and reasonable. Class counsel has exercised diligence in investigating the facts, researching the law, prosecuting these Actions, and facilitating settlement. The Actions presented novel questions of law, and counsel's knowledge and experience in class action litigation were necessary to shepherd the claims through the litigation process. The results obtained for the settlement class are, for reasons already noted, favorable to class members, and no class member has objected to the requested award. Finally, the requested award is consistent with other such awards in the Eleventh Circuit. *See, e.g., In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 2011 WL 5873389, at *28 (awarding fees of 30% of settlement); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1241 (S.D. Fla. 2006) (awarding fees of 31 1/3% of settlement)."

*Guzman,* at *12-13. *See also*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (upholding district court's granting of a 33.3% fee of $13.3 million from a $40 million class action settlement fund).

Current Class Counsel should be rewarded for settling this case at this juncture in the litigation. Rather than prolonging this action by conducting further discovery, extensive dispositive motion practice, and engaging in a lengthy trial in order to generate a higher fee award, Class Counsel have instead actively engaged in settlement negotiations with defense counsel to resolve this action, resulting in the saving of extensive judicial resources as well as the parties' resources. The fact that

this action settled at this earlier stage, is also, in some respect, due to Class Counsel's experience and reputation.

Even when settlement negotiations proved difficult and initially unsuccessful at the initial settlement meeting, Class Counsel was persistent and continued to negotiate with counsel for the Defendants.  Class Counsel's commitment resulted in the exceptional results they obtained for the class members in this case.

Class counsel also conducted extensive research of the hours worked by current and former employees of the Defendants in office locations spanning six (6) states.  This research was not limited to the 387 employees who were ultimately identified as members of the class.  The records of other employees were necessary to review to establish an accurate class. The data reviewed by Class Counsel was equivalent to over 100,000 pages of information.

The approval of a one third attorneys' fee, moreover, is consistent with percentage of the fund analysis awards granted by Courts in multiple other jurisdictions: *See, Relafen,* 231 F.R.D. at 82 (holding that "the one-third percentage of fund fee is not unreasonable as a matter of law" and awarding fees of one-third percentage of the fund); *In re Pacific Enters. Sec. Litig.*, 47 F.3d at 378, 379 (9th Cir.1995) (affirming the district court's award of 33% of the $12 million settlement fund); *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000)

(allowing a 40% fee on a recovery of $185 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (noting that 50% is the upper limit for the fee from a common fund, listing five class action cases awarding 33.3% fees, and awarding a maximum fee of 36% on a $127 million settlement fund); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.3% fee from the net settlement fund in securities class action); *Jenkins v. Trustmark Nat. Bank*, 3:12-CV-00380-DPJ, 2014 WL 1229661 (S.D. Miss. Mar. 25, 2014) (awarding 33.33% fee from the $4 million settlement fund); *Burford v. Cargill, Inc.*, CIV.A. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) (holding that "the benchmark percentage in this case is one-third" of the common fund).

In addition, and as reflected in the Settlement Agreement, the proposed fee was negotiated at arm's length by experienced and sophisticated counsel for both Parties. The Parties' agreement on fees and costs meets the Supreme Court's directive on this issue, which sets out consensual resolution of attorneys' fees as the ideal culmination of successful litigation. *See, Hensley v. Eckerhart*, 461 U.S. 424, 426, 103 S. Ct. 1933, 1935 (1983). A fee negotiated under such circumstances is entitled to substantial weight. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337 at *13 (C.D. Cal. June 10, 1992); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M.), 1990 WL 454747,

*3 (S.D. Cal. Aug. 30, 1990) ("[b]ecause this Court believes the parties should be encouraged to settle all their disputes as part of the settlement ... including the amount of the fee, it believes that if the agreed-to fee falls within a range of reasonableness, it should be approved as part of the negotiated settlement between plaintiffs and defendants").

Additionally, the contingent nature of Class Counsel's representation supports the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. V. A.C.L.N. Ltd.*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608 at * 11 (S.D.N.Y. May 14, 2004); *see also, In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 460 (D.P.R. 2011) (noting that "whenever an attorney takes a case on a contingency basis, as [l]ead [c]counsel has done, there is always a risk of non-payment. Certainly there are instances where diligent and experienced plaintiff's attorneys pour thousands of hours and dollars into their class action case only to recover little or nothing at trial or on appeal); *In re Lupron*, 2005 U.S. Dist. LEXIS 17456 at *15 ("Many cases recognize the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in

determining the appropriate fee to award); *In re Prudential Sec. Ltd. P'Ships Litig.*, 985 F. sup. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award").

The contingent fee risk encompasses the possibility of no payment or underpayment. *See, In re San Juan Dupont Plaza Hotel Fire Litig.*, 50 F. Supp. 2d 100, 104 (D.P.R. 1999) ("[C]ounsel have undertaken this litigation subject to substantial risks of loss on the merits and have devoted many hours to the prosecution of this cause with virtually no assurances of payments of their fees."); *In re Cont'll lll. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing the district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

Evaluating the risks undertaken by Class Counsel in prosecuting this class action fully supports the reasonableness of the fee. Because Class counsel undertook this matter on a wholly contingent basis, they have not been compensated for their time or expenses that they have incurred since this action began and would have received no compensation had this case not been successful.

Finally, the requested award of one-third of the settlement fund—$369,000—to Class Counsel also encompasses Class Counsel's unreimbursed expenses which have been incurred during the course of this litigation. Class Counsel in this matter

have submitted itemized reports of their respective firm's expenses for the Court's consideration. *See*, **Exhibit D** and **Exhibit E** (reflecting $16252.37 in expenses incurred by the law firm of Barrett & Farahany, and $1140.35 in expenses incurred by the law firm of Meyer Ford & Glasser, respectively). These expenses are reasonable and further support the conclusion that the award of fees and costs in the amount of one-third of the settlement fund is appropriate here.

Accordingly, Class Counsel respectfully requests that this Court approve their request for costs and fees in the amount of one-third of the settlement fund: $369,000.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Final Order Approving Class and Collective Action Settlement, attached as **Exhibit F** hereto and as Exhibit B to the Settlement Agreement, which, *inter alia*:

(i) approves the Parties' settlement as fair, reasonable, and adequate;

(ii) finally certifies the instant proceeding as a class action pursuant to Federal Rule of Civil Procedure 23, and conditionally certifies this proceeding collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") for purposes of settlement only;

(iii) approves incentive payments to Plaintiff and those who submitted opt-in claim forms prior to October 30, 2017;

(iv) awards Class Counsel attorneys' fees and costs in the amount of $369,000; and

(v) enters final judgment in accordance with the terms of the Settlement Agreement.

Respectfully submitted this 16th day of April, 2018.

/s/ *Amanda A. Farahany*

Amanda A. Farahany
Georgia Bar No. 646135
**BARRETT & FARAHANY**
1100 Peachtree Street, Suite 500
Atlanta, Georgia 30309
Telephone: (404) 214-0120
Facsimile: (404) 214-0125
amanda@justiceatwork.com

Sean W. Cook (admitted *pro hac vice*)
West Virginia State Bar No. 10432
**MEYER FORD & GLASSER**
120 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-3900
Facsimile: (304) 345-3935
sean.cook@meyerandford.com

*Attorneys for the Plaintiff*

## **<u>CERTIFICATION</u>**

I do hereby certify that this document has been prepared in Times Roman font, 14 point, in compliance with LR 5.1(C) of this Court.

*/s/ Amanda A. Farahany*
Amanda A. Farahany
Georgia Bar No. 646135
amanda@justiceatwork.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PAUL WHITE, individually and on
behalf of all those similarly situated,

      Plaintiff,

v.

GRANITE
TELECOMMUNICATIONS, LLC,

      Defendant.

CIVIL ACTION NO.
1:17-cv-03243-TWT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2018, the above PLAINTIFF'S UNOPPOSED MOTION FOR MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; SERVICE PAYMENT TO NAMED PLAINTIFF AND OTHERS; AND FOR AN AWARD OF ATTORNEY FEES, COSTS, AND EXPENSES was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings.

*/s/ Amanda A. Farahany*

Amanda A. Farahany
Georgia Bar No. 646135